UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE TAVARES WINTERS and
SHYTELIA RENEE PEARSON,

    Plaintiffs,

v

OFFICER JEFF FRERES, et al.,

    Defendants.
_____/

No. 1:06-cv-663

HON. JANET T. NEFF

## **OPINION**

Pending before the Court is defendants' Motion for Order to Show Cause Why Case Should Not Be Involuntarily Dismissed (Dkt 97), which the Court has treated as a Motion for Involuntary Dismissal. *See* FED. R. CIV. P. 41(b). No response to the motion was filed. Being familiar with the record and having reviewed defendants' submission and accompanying exhibits, the Court finds that an additional hearing would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court grants defendants' motion.

I.    BACKGROUND

This case began in September 2006 when attorneys Anthony Greene and Kevin Floyd brought suit on behalf of plaintiffs against five officers of the Grand Rapids Police Department (GRPD), the chief of police, and the city of Grand Rapids. This matter was originally assigned to

1

the Honorable Wendell A. Miles.  Plaintiffs were permitted to proceed in this Court with *in forma pauperis* status.

Plaintiff Winters is the son of plaintiff Pearson.  Their complaint arose from a September 2004 traffic stop conducted by GRPD Officer Jeffrey Dionne; however, plaintiffs were not in the car Officer Dionne stopped for speeding.  Plaintiffs were bystanders who decided to become involved in the escalating scene outside their home.  The parties agreed upon the following statement of facts:

> Early on the morning of September 20, 2004, GRPD Officer Jeffrey Dionne, a uniformed patrol officer assigned to the city's East Service Area, was sitting in [a] fully marked GRPD patrol car near the intersection of Buchanan Avenue, SW, and Brown Street, SW.  The speed limit in this area is 25 m.p.h.  Officer Dionne spotted a vehicle which he believed was speeding.  He followed the vehicle in [an] attempt to stop it and finally caught up with it on Fox Street, SW, near the intersection with Feakin Avenue, SW.  The vehicle stopped directly across from 255 Fox, SW. Officer Dionne stopped his patrol car behind it.  At approximately 1:52 a.m., Dionne called out the traffic stop on his radio and got out of his car to make contact with the vehicle.  However, as he approached the car, the front seat passenger jumped out of the car, moved quickly toward Officer Dionne, and confronted him in an "extremely combative verbally" manner.  As Dionne's attention was diverted to the passenger, the driver also got out and approached the officer "quickly."  The driver and passenger aggressively surrounded Officer Dionne who believed that the two were about to attack him.
>
> Officer Dionne called for more cars to assist him.  Alone at the scene and believing he was threatened with an imminent assault, Officer Dionne took out his aerosol subject restraint [ASR] spray canister and sprayed oleoresin capsicum solution into Charles Johnson's face.  Dionne managed a "quite lengthy struggle" with the two men for 30 to 45 seconds until Officer Case Weston arrived on the scene at approximately 1:53 a.m.  Weston saw Officer Dionne engaged with some people near a stopped vehicle and giving them loud verbal commands.  Charles Johnson was running east on Fox, touching his face and complaining loudly, so Weston knew he had been sprayed with O.C.  Officers Dionne and Weston chased and caught him about 100 feet away.  As they attempted to handcuff Johnson, he struggled and tried to pull away.  Two of the stopped vehicle's occupants had come up and were yelling at the officers.  Weston told Officer Dionne that [] he would deal with Johnson, so Dionne directed his attention to backing the other two men away.  One of them, Darryl Warren, was a foot away, yelling obscenities at the officers.  He tried to pull

Johnson away from the officers. Leaving Weston to handcuff Johnson, Officer Dionne grabbed Warren, in order to arrest and handcuff him. The officers struggled with the two men for a minute or two, until other officers arrived on the scene in marked GRPD cars. Johnson was secured in Officer Dionne's car, while Warren was placed in Officer Jeffery Freres' car.

Officer Jeffery Freres arrived on the scene and monitored the crowd, keeping people away from Dionne and Weston while they secured the prisoners. Sergeant Vincent Reilly arrived on the scene as Officers Dionne and Weston were struggling with Johnson and Warren on the north side of Fox Street. Sgt. Reilly ran up to the two officers, who now had Johnson and Warren in handcuffs and under control, but told him that two other men had fled from the traffic stop. Sgt. Reilly went to the house indicated by Officer Dionne and looked for the other two men. Unable to find them, he returned to the traffic stop scene. Once there, his attention was drawn toward the subject vehicle where he saw a woman (later identified as Patricia Warren, the mother of two of the vehicle's original occupants) who appeared to be taking the keys out of the ignition. Sgt. Reilly told her that this was a police investigation, not to remove the vehicle, and attempted to find out what her involvement was with the vehicle. He then told her to stay on the sidewalk and he would talk to her in a few minutes. Warren was yelling loudly and Sgt. Reilly noticed that this noise was attracting the attention of people in the neighboring houses who were looking out their windows to see what was happening. Warren went up into the grassy parkway between the street and sidewalk as directed, but kept yelling. Finally, Reilly arrested her for creating a disturbance.

As Sgt. Reilly started to handcuff Warren, Officer Freres, who had begun to search the stopped car, went over to assist him in walking Warren to a police car. At that point, a woman [later identified as plaintiff Shytelia Pearson] came out of 244 Fox, followed by a young man [later identified as plaintiff Willie Winters] and both moved quickly toward where the officers were arresting Patricia Warren. Freres' attention was drawn to them. The woman, plaintiff Shytelia Pearson, was "headed off" and quickly stopped by Sergeant John Wu. At some point, they ended up on the ground. Pearson eventually was persuaded to go back into her house and was not arrested. Officer Freres attempted to stop plaintiff Willie Winters. As Freres grabbed Winters, Sgt. Wittkowski deployed his O.C. and sprayed it into Winters' face. Officer Freres and Winters fell down on the sidewalk. Winters eventually was handcuffed and secured in a patrol car. As he went down to the ground, Winters hit the sidewalk, chipping his right upper central and lateral incisors. He also incurred superficial abrasions to his right palm and right knee and a bruise on his head.

Plaintiffs filed a complaint with the GRPD Internal Affairs Unit which was investigated by Sgt. Deborah Vazquez who authored a lengthy report detailing her investigation and concluding that the actions of the officers involved in the September 20, 2004 incident were lawful and justified and recommending that they

be exonerated on plaintiffs' claims of unlawful arrest and excessive force.  [Joint Proposed Final Pretrial Order (Dkt 80) at 3-5]

Plaintiffs alleged fourteen counts in their complaint and the amended version of their complaint filed in October 2006.  The counts, the majority of which were supported by only one sentence each, were the following:

1. 42 U.S.C. § 1983 Against Individual Defendants As to Willie Tavares Winters

2. 42 U.S.C. § 1983 Against Individual Defendants As to Shytelia Renee Pearson

3. Assault & Battery As to Willie Tavares Winters

4. Assault & Battery As to Shytelia Renee Pearson

5. Excessive Force As to Willie Tavares Winters

6. Excessive Force As to Shytelia Renee Pearson

7. False Arrest As to Willie Tavares Winters

8. Abuse of Authority As to Willie Tavares Winters

9. Emotional Distress As to Willie Tavares Winters

10. Emotional Distress As to Shytelia Renee Pearson

11. Illegal Imprisonment As to Willie Tavares Winters

12. Malicious Prosecution As to Willie Tavares Winters

13. 42 U.S.C. § 1983 Against the City of Grand Rapids As to Willie Tavares Winters

14. 42 U.S.C. § 1983 Against the City of Grand Rapids As to Shytelia Renee Pearson

The Magistrate Judge conducted a Rule 16 conference in January 2007.  A twelve-day jury trial was noticed for February 2008.  Rule 26(a)(1) disclosures and the voluntary exchange of documents were to occur by February 22, 2007.  Disclosure of expert witnesses was to occur by

April 30, 2007, with expert witness reports exchanged by May 30, 2007 (plaintiffs) and June 15, 2007 (defendants). The discovery deadline was July 30, 2007.

During the summer of 2007, the Magistrate Judge extended the discovery deadline several times. As for what discovery was eventually conducted, only defendants provided notice of their expert and lay witnesses (Dkts 22 & 29) and expert witness reports (Dkt 25) and sent plaintiffs interrogatories and requests for production of documents (Dkt 26). The parties have indicated that they have no answers to the written interrogatories that they would expect to offer into evidence at trial, nor do they have any deposition testimony to offer (Dkt 80).

A settlement conference was scheduled for January 17, 2008. However, on January 7, 2008, defendants moved to adjourn both the settlement conference and the trial date in order for the matter to be referred to case evaluation (Dkt 41). The Magistrate Judge agreed to defendants' requests, re-scheduling trial for May 12, 2008 (Dkts 45-46). A case evaluation panel was selected (Dkts 45-47). In February 2008, defendants moved to adjourn case evaluation due to plaintiffs' counsel's failure to prepare for the case evaluation (Dkt 48). The Magistrate Judge granted the adjournment of case evaluation "pending further order" (Dkt 49).

On April 22, 2008, defendants filed a motion in limine, seeking to exclude multiple categories of evidence from trial (Dkt 51). The next day, April 23, 2008, the Magistrate Judge conducted a conference that did not settle the case (Dkt 54).

On April 24, 2008, the case was re-assigned from Judge Miles to the undersigned pursuant to Administrative Order No. 08-056 (Dkt 56). This Court entered an Amended Case Management Order, setting the Final Pretrial Conference for September 15, 2008 and trial for October 14, 2008 (Dkt 58). This Court also ordered case evaluation to occur no later than July 31, 2008 (Dkt 59).

5

On July 2, 2008, this Court entered an order directing plaintiffs' counsel to contact the case evaluator to schedule a case evaluation or face sanctions (Dkt 62). As the file included no response from plaintiffs' counsel to defendants' April 2008 motion in limine, this Court also entered an order directing plaintiffs' counsel to file a response no later than July 21, 2008 (Dkt 63). At plaintiffs' request, this Court subsequently agreed to extend the date for case evaluation by two weeks, until August 15, 2008 (Dkt 66).

On July 17, 2008, attorney Floyd was suspended from practicing law in this district. Nonetheless, on July 21, 2008, Floyd filed a response in opposition to the motion in limine (Dkt 68). The document Floyd filed, presuming it can even be properly considered by this Court, was not helpful as it primarily consisted of his repeated assertion that the "jury should be made aware" of the evidence defendants sought to exclude.

On August 7, 2008, defendants moved for an order to show cause for plaintiffs' noncompliance with the case evaluation schedule (Dkt 72). Defendants opined that "[t]he record in this matter shows a persistent pattern of failure by plaintiffs to either to comply with deadlines set by the court and the parties or to take any action until the last possible minute despite warnings from the court and requests by defendants" (*id.*). This Court referred the motion to the Magistrate Judge, who resolved it by permitting plaintiffs to participate in case evaluation without pre-payment of fees or costs (Dkt 75). The case evaluation was finally held on August 15, 2008, and at least one party filed a rejection of the award (Dkt 79).

In preparation for the September 15, 2008 Final Pretrial Conference, the parties filed a Joint Proposed Final Pretrial Order on September 11, 2008 (Dkt 80). Plaintiffs proposed eight non-expert witnesses, and defendants objected to half of them (*id.*). Defendants also objected to plaintiffs

6

calling any of their five proposed expert witnesses (*id.*). Defendants claimed that plaintiffs did not timely identify the witnesses pursuant to the Case Management Order and never produced any summaries of their expected testimony, treatment records, or expert reports (*id.*).

The parties were, by their own admission in chambers on September 15, 2008, not ready for trial. Greene explained that Floyd was the attorney primarily involved in handling plaintiffs' case. Following its discussion with counsel, this Court decided, as a last resort, to give the parties thirty more days to formulate a plan for managing their case. The Court issued an order requiring defense counsel and Greene to "jointly file documentation by October 15, 2008, which details the steps counsel propose for placing this case in a manageable posture, including the selection of additional Alternative Dispute Resolution" (Dkt 82). The order also adjourned the Final Pretrial Conference and trial dates "until further order" (*id.*).

On October 15, 2008, defense counsel filed a Motion for Order to Show Cause for Noncompliance with this Court's September 15, 2008 order to Formulate and Submit a Proposed Case Management Plan (Dkt 83). Defense counsel represented that plaintiffs were refusing to cooperate with attorney Greene (*id.*). She requested that plaintiffs and their attorney appear and show cause why their failure should be excused (*id.*). She further requested that upon their failure to show good cause, the Court order "appropriate sanctions ... up to and including dismissal of their complaint with prejudice and with costs to defendants" (*id.*). Attached as exhibits to defendants' motion were copies of the defense attorney's multiple attempts at correspondence with Greene following their September 15, 2008 conference with the Court.

On October 17, 2008, this Court issued an order for plaintiffs to appear on November 19, 2008 and show cause why sanctions should not be imposed, including dismissal of their Amended

7

Complaint, for failure to comply with the Court's September 15, 2008 order (Dkt 84). On October 23, 2008, attorney Greene filed a motion to withdraw (Dkt 85). According to Greene, plaintiffs told him that "they did not hire him" and "no longer wanted [his] services" (*id.*).

This Court referred Greene's motion to withdraw to the Magistrate Judge. The Magistrate Judge listened to the parties for approximately forty minutes on November 4, 2008 and briefly ruled from the bench on November 7, 2008 that he would permit Greene to withdraw from this case. He issued an effectuating order later that day. The Magistrate Judge's order provides the following:

> Pending before the court is Attorney Anthony C. Greene's Motion to Withdraw as Counsel for Plaintiffs (docket no. 85). Plaintiffs strongly endorsed the motion and have informed the court that they have obtained another attorney, Stephen Grimm, who will be their new attorney. The court being satisfied that there has been, in fact, a breakdown of the attorney-client relationship in this matter, the motion is GRANTED.
>
> The parties are cautioned, as they were at the two hearings held on this motion, that new counsel takes the case as he finds it. A show cause hearing remains scheduled for November 19, 2008 before the trial judge, at which time plaintiffs shall appear and show cause why sanctions should not be imposed, including dismissal of their Amended Complaint, for failure to comply with the court's September 15, 2008 order setting deadlines for a mutually agreed-upon case management plan, pursuant to the court's order of October 17, 2008 (docket no. 84). IT IS SO ORDERED. [Dkt 89 (emphasis in original)]

At the November 19, 2008 show cause hearing, plaintiffs appeared *pro se.* Plaintiffs indicated that Stephen Grimm, the attorney whom they previously represented to the Magistrate Judge had taken their case, had, in fact, not yet determined whether he would represent them. Grimm was present at the hearing and informed the Court that he may be willing to represent plaintiffs but had not yet reviewed their case file.

Defense counsel requested dismissal of plaintiffs' Amended Complaint for plaintiffs' failure to cooperate, asserting that plaintiffs' conduct impeded her ability to defend against this lawsuit.

Defense counsel opined that the resulting delay in attaining a resolution of this case was prejudicial, especially to the individual police officers named in this suit.

This Court informed plaintiffs that dismissal of their case was warranted by their failure to prosecute this case with reasonable diligence. However, the Court indicated that it was willing to grant plaintiffs additional time to complete their discussions with attorney Grimm and allow him to review the file and reach a decision about whether to aid plaintiffs in placing this case in a manageable posture. This Court entered an order granting attorney Grimm until December 1, 2008 to file either an appearance on plaintiffs' behalf or written documentation indicating that he had declined to represent plaintiffs (Dkt 93). This Court also indicated that should attorney Grimm not file an appearance in this matter, then the Court would proceed with exercising its discretion to dismiss this case (*id.*).

To his credit, attorney Grimm engaged in settlement negotiations with the defense attorney and plaintiffs, with plaintiffs ultimately agreeing to send plaintiff Winters for evaluation by a dentist to determine a treatment plan and cost thereof. On December 1, 2008, pursuant to defendants' motion, this Court agreed to grant attorney Grimm an additional two weeks – until December 15, 2008 – to decide whether to enter an appearance (Dkts 95 & 96). The Court indicated that it was amenable to the extension of time to facilitate a possible resolution of this matter (Dkt 96). However, the Court warned plaintiffs that further requests for an additional extension would not be favored as plaintiffs were on notice that their failure to prosecute this case with reasonable diligence warranted dismissal (*id.*).

Plaintiff Winters attended and submitted to an evaluation by the mutually agreed upon dentist. Defendants paid the cost of the evaluation, and the dentist issued a written evaluation (Df.

9

Exhs. 1 & 2). Defense counsel proposed to plaintiffs, through attorney Grimm, a monetary settlement of the matter that was based largely upon the dentist's cost estimate.

On December 9, 2008, attorney Grimm informed this Court in writing that he declined to enter an appearance on plaintiffs' behalf in this matter (Df. Exh. 3). Defense counsel represents that after receiving a copy of attorney Grimm's December 9, 2008 letter, she spoke with Grimm by telephone and was informed that plaintiffs had rejected the settlement offer and had determined to seek other counsel (Mot. at 5).

However, on December 15, 2008, defense counsel received an e-mail message from attorney Grimm in which he conveyed plaintiffs' decision to accept the settlement offer (Df. Exh. 4). Accordingly, on December 17, 2008, defense counsel e-mailed Grimm settlement papers for plaintiffs to sign and a required tax form for them to complete and sign (Df. Exh. 5). Defense counsel represents that Grimm forwarded the paperwork to plaintiffs (Mot. at 5). However, defense counsel subsequently discovered during telephone conversations with Grimm on December 30, 2008 and January 7, 2008 that plaintiff Pearson had decided she no longer wished to settle her claims, although plaintiff Winters still wished to settle the matter as agreed (*id.* at 5-6).

On January 12, 2009, defendants filed the instant Motion for Order to Show Cause Why Case Should Not Be Involuntarily Dismissed (Dkt 97). Plaintiffs did not file a response to the motion.

Defense counsel subsequently filed stipulations and proposed dismissals entered into by defendants and plaintiff Winters, indicating that Winters voluntarily agreed to dismiss his claims against all defendants (Dkts 100-102). This Court entered the stipulations and proposed dismissals (Dkts 103 & 104). Consequently, defendants' pending motion, which this Court has treated as a Motion for Involuntary Dismissal pursuant to FED. R. CIV. P. 41(b), pertains only to Pearson's five

pending counts: Counts 2 and 14 (§ 1983), 4 (assault & battery), 6 (excessive force), and 10 (emotional distress).

## II.    ANALYSIS

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  In *Schafer v. City of Defiance Police Dept.,* 529 F.3d 731, 736 (6th Cir. 2008), the Sixth Circuit described the extent to which Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court.  The Court of Appeals observed that "[t]his measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties" and that a district court must therefore be given "substantial discretion in serving these tasks."  *Id.* (quoting *Knoll v. AT & T,* 176 F.3d 359, 363 (6th Cir. 1999)).

The Sixth Circuit cautioned that "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff."  *Schafer,* 529 F.3d at 736 (quoting *Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005)).  "Contumacious" is defined as "perverse in resisting authority" and "stubbornly disobedient."  *Id.* (quoting Webster's Third New Int'l Dictionary 497 (1986)).

There are "competing concerns" that guide a court's decision to dismiss an action for failure to prosecute.  *Schafer,* 529 F.3d at 737; *Little v. Yeutter,* 984 F.2d 160, 162 (6th Cir. 1993).  On the one hand, there is the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to

11

actively pursue its claims. *Little, supra.* On the other hand is the policy that favors disposition of cases on their merits. *Id.*

The Sixth Circuit considers four factors in reviewing a district court's dismissal for failure to prosecute:

(1) whether the party's failure is due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dismissed party's conduct;

(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer,* 529 F.3d at 737 (citing *Knoll,* 176 F.3d at 363).

To support a finding that a plaintiff's actions were motivated by willfulness, bad faith, or fault under the first factor, the plaintiff's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer,* 529 F.3d at 737 (citing *Wu,* 420 F.3d at 643). For example, in *Wu, supra,* the Sixth Circuit concluded that the plaintiff's failure to seek a default judgment did not evince the requisite intent under the first factor; however, in *Schafer, supra* at 739, where the plaintiff had not re-filed his complaint within the period specified by the district court, the Sixth Circuit decided that the plaintiff's conduct, although not demonstrating bad faith, nevertheless showed willfulness and fault "in that he was at best extremely dilatory in not pursuing his claim, which indicates an intention to let his case lapse."

For purposes of finding prejudice resulting from the dismissed party's conduct under the second factor, the Sixth Circuit has drawn a distinction between facts where the defendant pursues cooperation that a plaintiff is legally obligated to provide and facts where a defendant has not

expended efforts to oppose a plaintiff's failure to prosecute. *See Schafer, supra; Wu,* 420 F.3d at 644.

The *Schafer* Court emphasized that prior notice under the third factor is a "key consideration" in determining whether a district court abused its discretion in dismissing a case for failure to prosecute. *Schafer,* 529 F.3d at 737-38. *See also Wu,* 420 F.3d at 644 ("This court has repeatedly reversed district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal.") (internal quotation marks omitted).

Last, as acknowledged above, the dismissal of a claim for failure to prosecute is a harsh sanction. The fourth factor, the district court's consideration of less drastic sanctions, considers whether the district court exercised its discretion with appropriate forethought. *Schafer,* 529 F.3d at 738; *Harmon,* 110 F.3d at 368-69.

Applying the four factors here, it is clear that the record in this case supports the Court's discretionary decision to terminate the remaining claims. Under the first factor, "whether the dismissed party's failure is due to willfulness, bad faith, or fault," defendants assert that plaintiffs, both personally and through prior counsel, have willfully and stubbornly failed to comply with the court rules and other procedural requirements and to cooperate with this Court's orders (Mot. at 6). This Court agrees. Their collective actions and omissions include a failure to engage in the discovery process during the summer of 2007, including their failure to timely identify witnesses and failure to produce any summaries of their expected testimony, treatment records, or expert reports;

repeated failures to prepare for case evaluation in February 2008, July 2008, and August 2008; a failure to file a timely response to defense counsel's motion in limine; a failure to prepare for trial; and a failure to formulate and submit a case management plan as required by this Court's September 15, 2008 order.

The last failure to prosecute this case is the most troubling. Following the failed Final Pretrial Conference on September 15, 2008, when this Court ordered counsel to cooperate in formulating a case management plan, it was with the intention to give plaintiffs one more chance to get their case back on track. The subsequent lack of progress is directly attributable to plaintiffs personally. As defense counsel points out, it is undisputed that plaintiffs refused to cooperate with attorney Greene and ultimately refused his representation, despite the fact that Greene was willing to represent plaintiffs at trial.

Applying the second factor, "whether the adversary was prejudiced by the dismissed party's conduct," defendants argue that the record in this case supports a finding that defendants have been prejudiced by plaintiffs' dilatory conduct (Mot. at 8). Again, this Court agrees. Through informal communications and formal motions to show cause, defense counsel repeatedly prodded plaintiffs' attorneys into taking required action throughout this case, most times at defendants' expense. Defendants were not provided with timely identification of witnesses nor with any indication of the topics about which the witnesses eventually identified would testify. Defendants' attempts to focus the evidence to be produced against them at trial was thwarted by plaintiffs' counsel's failure to file either a timely or effective response on behalf of plaintiffs in response to the motion in limine. Defense counsel's own repeated preparation for case evaluation was never matched by similar efforts by plaintiffs' attorneys. Defendants have an interest in and entitlement to a timely resolution

of this matter, and the record clearly establishes that defense counsel's case preparation was prejudiced, despite her efforts to work with plaintiffs personally and with attorneys Floyd, Greene, and Grimm toward resolution of this case by settlement or trial.

The Court turns next to the third factor, "whether the dismissed party was warned that failure to cooperate could lead to dismissal." Within months of receiving this case, this Court warned plaintiffs' counsel in its July 2, 2008 order to contact the case evaluator to schedule a case evaluation or face sanctions. Only a couple of months later, at the failed Final Pretrial Conference on September 15, 2008, this Court repeated its warning that sanctions may be imposed, including dismissal of their Amended Complaint, for plaintiffs' continued failure to diligently prosecute this case. In ruling on attorney Greene's subsequent motion to withdraw, the Magistrate Judge reiterated for plaintiffs this Court's warning that they were facing dismissal of their Amended Complaint. Hence, by the time plaintiffs appeared at the November 19, 2008 show cause hearing with no appearance by their proposed new counsel and no Case Management Plan, they had received ample notice both from the bench and through written orders that their failure to cooperate could lead to dismissal of their case.

The last consideration, "whether less drastic sanctions were imposed or considered before dismissal was ordered," similarly weighs in favor of dismissal. As defense counsel points out and the facts above recount, this Court did not merely consider less drastic alternatives to dismissal of this action, it afforded plaintiffs the benefit of several remedial measures that were intended to give them a fair opportunity to prosecute their case. Specifically, plaintiffs were granted the benefit of several extensions of the discovery deadline, an adjournment of the settlement conference, an extension of the deadline for responding to defendants' motion in limine, repeated adjournments of

15

case evaluation, an extra thirty days in which to formulate a Case Management Plan, and repeated extensions of time to finalize their relationship with a proposed third attorney and settlement negotiations with defendants. Although plaintiff Winters reached a resolution of his claims, the Court's efforts were apparently for naught as to plaintiff Pearson.

In sum, the delineated failures to prosecute this case by plaintiff Pearson and her attorneys are due to willfulness, bad faith, or fault; defendants have been prejudiced by the collective conduct of plaintiff Pearson and her attorneys; plaintiff was warned that failure to cooperate could lead to dismissal; and this Court considered less drastic sanctions and implemented several remedial measures. The Court is convinced that it must grant defendants' request to dismiss Pearson's claims in light of the failures by plaintiff and her attorneys to actively pursue her claims, the public's interest in expeditious resolution of litigation, and the Court's need to manage its docket.

An Order of Dismissal will issue.


Date:  February 19, 2009                         /s/ Janet T. Neff                         
                                                JANET T. NEFF
                                                United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE TAVARES WINTERS and
SHYTELIA RENEE PEARSON,

     Plaintiffs,

No. 1:06-cv-663

HON. JANET T. NEFF

v

OFFICER JEFF FRERES, et al.,

     Defendants.
_____/

## ORDER OF DISMISSAL

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that defendants' Motion for Order to Show Cause Why Case Should Not Be Involuntarily Dismissed (Dkt 97), which the Court has treated as a Motion for Involuntary Dismissal Pursuant to FED. R. CIV. P. 41(b), is GRANTED, and this case is DISMISSED.

Date: February 19, 2009              /s/ Janet T. Neff
                                                   JANET T. NEFF
                                                   United States District Judge